UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00309-CRS

**COURTNEY I.**                                                                                                   **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,** *Acting*
*Commissioner of Social Security*                                                                 **DEFENDANT**

### REPORT AND RECOMMENDATION

Claimant Courtney I. ("Claimant") appeals from the final determination of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Claimant has filed a Fact and Law Summary and Brief. (DN 15; DN 16). The Commissioner has responded in a Fact and Law Summary. (DN 18). The time for Claimant to file a reply has expired. The District Judge has referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 14).

### I. Findings of Fact

Claimant filed for disability insurance benefits under Title II and supplemental security income benefits under Title XVI on September 24, 2019. (Tr. 273, 280). Her applications alleged disability beginning July 1, 2018 based on: post traumatic stress disorder, depression, anxiety, night terrors, hallucinations, high blood pressure, back pain, right-ankle injury, asthma, leukocytosis, and non-epileptic seizures. (Tr. 309). Claimant's applications were denied on initial review and again on reconsideration. (Tr. 85, 100, 119, 136). Administrative Law Judge Susan Brock ("ALJ Brock") conducted a hearing in Louisville, Kentucky, on February 8, 2021. (Tr. 55-

56). Claimant attended the hearing by telephone with her attorney.[1] (*Id.*). An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. She lives in a shelter for homeless women and has her own room. (Tr. 61-62). Claimant last worked in 2018 as a babysitter. Up until December of 2013, Claimant had provided in-home care for individuals with developmental disabilities. (Tr. 63). On an average day, Claimant rates her ankle pain as a 7 or 8 on a scale of 1 to 10. (Tr. 70). She states she can only stand "five minutes or so" at a time before her kneecaps are shaking and can sit for about 30 to 45 minutes at a time with frequent repositioning. (*Id.*). She complains of muscle spasms in her back, legs, and shoulders and of permanent swelling in her neck. (Tr. 73-74). Despite her ailments, Claimant performs daily chores in her room at the shelter. (Tr. 71). She reports, however, having to sit in a chair to wash dishes or cook at the stove. (Tr. 75-76).

While her physical health problems are "pretty hard to deal with[,]" Claimant characterizes her mental health as her "biggest obstacle." (Tr. 64-65). She struggles with PTSD, depression, anxiety, self-mutilation, hearing voices, seeing shadows, and being around men due to a history of assault. (Tr. 66). Vivid nightmares cause disruptions in her sleep. (Tr. 66-67). She has been sober for nearly eighteen months. (Tr. 68). Claimant explains her mental health difficulties can trigger "at the drop of a dime," suddenly transporting her to traumatic moments in her past. (Tr. 76). It takes her a couple of hours after an episode to feel normal again. (*Id.*). She reports enjoying doing her hair and make-up, coloring, attending AA meetings, and talking on the phone with her mom, her friend, and her AA sponsor. (Tr. 72).

---

[1] Claimant consented to the administrative hearing occurring by phone due to extraordinary circumstances surrounding the COVID-19 pandemic. (Tr. 57, 268).

ALJ Brock issued an unfavorable decision on April 27, 2021. (Tr. 32-49). She applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since July 1, 2018, her alleged onset date. (Tr. 35). Second, Claimant has the severe impairments of lumbar spondylolisthesis, cervical degenerative disc disease, posttraumatic arthritis right ankle, obesity, psychogenic nonepileptic seizures, bipolar disorder, and posttraumatic stress disorder. (*Id.*). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 36). Between steps three and four, ALJ Brock found Claimant has the residual functional capacity to perform "light work" as defined in 20 CFR § 404.1567b) and 416.967(b) with the following exertional limitations:

> She can only occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl. [She] should avoid concentrated exposure to extreme cold, heat, wetness and humidity, should avoid even moderate exposure to odors, dusts, gases, and poor ventilation, and should avoid all exposure to unprotected heights. Mentally, [she] can perform simple routine tasks, occasionally interact with coworkers, supervisors, and the general public, and can tolerate occasional changes in the workplace and recognize hazards.

(Tr. 38).

Fourth, ALJ Brock found Claimant could not perform any of her past relevant work. (Tr. 47). Fifth and finally, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*). ALJ Brock concluded Claimant was not under a disability, as defined in the Social Security Act from July 1, 2018, through April 27, 2021, the date of her decision. (Tr. 48-49).

Claimant appealed ALJ Brock's decision. (Tr. 269-72). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ

Brock's decision. (Tr. 16). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Conclusions of Law

### A. Standard of Review

When reviewing an Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan,* 2 F.3d 692, 695 (6th Cir. 1993).

### B. Analysis

Claimant submits three claims of error from ALJ Brock's decision. First, Claimant argues ALJ Brock failed to include limitations relating to Claimant's obesity when assessing her residual functional capacity and elsewhere in her decision. (DN 16, at PageID # 2101-06). Claimant next asserts that despite finding the State Agency psychological consultants' opinions to be persuasive, ALJ Brock failed to adopt any limitation regarding her being off task during the workday. (*Id.* at PageID # 2107-11). And finally, the Claimant contends no evidence from any medical source in the record supports ALJ Brock's assessed RFC limitations. (*Id.* at PageID # 2111-14).

4

1. ALJ Brock's Analysis of Claimant's Obesity

Because ALJ Brock found Claimant had the severe impairment of obesity at Step Two of her analysis, Claimant argues ALJ Brock was required to "thoroughly discuss and consider the impact of obesity" at Step Three of her analysis and in her RFC analysis but failed to do so. (DN 16, at PageID # 2102-03). Claimant argues ALJ Brock's conclusion at Step Three that the "medical evidence does not establish the existence of the above signs or symptoms [of obesity]" is nonsensical and contradicts ALJ Brock's finding at Step Two that her obesity was severe. (*Id.* at PageID # 3). As for ALJ Brock's evaluation of obesity in the RFC, Claimant remarks ALJ Brock dedicated only five sentences to analyzing functional limitations relating to obesity and did not create a logical bridge between the evidence of Claimant's obesity and the opined functional limitations. (*Id.* at PageID # 2104-05). The Claimant accuses ALJ Brock of not considering Dr. Sarah Couch's finding that Claimant's weight affected her ability to ambulate and of improperly viewing Dr. Couch's examination "in a vacuum." (*Id.* at PageID # 2105-06). Believing ALJ Brock mischaracterized evidence of her obesity to her detriment, Claimant asserts the RFC is not supported by substantial evidence in the record.

The Commissioner responds that ALJ Brock clearly accounted for Claimant's severe obesity in the RFC by thoroughly analyzing nearly 1,700 pages of medical records, many relating to Claimant's obesity and its impact on her functional abilities, and thoroughly evaluated the opinion evidence relating to Claimant's obesity. (DN 18, at PageID # 2121). According to the Commissioner, Claimant's argument that ALJ Brock should have included greater limitations based on her severe obesity improperly flips the burden of proof because it was ALJ Brock's prerogative to include only those limitations consistent with and well-supported by the record. (*Id.* at PageID # 2124). Regarding ALJ Brock's Step Three analysis, the Commissioner explains that

5

since obesity is not a listed impairment, ALJ Brock appropriately summarized a myriad of ways obesity might limit an individual, as presented in SSR 19-2p, and then concluded the medical evidence in Claimant's case did not establish any of those potential effects. (*Id.* at PageID # 2125-26).

Social Security Ruling 19-2p provides guidance for how ALJs should evaluate obesity in disability claims. 2019 WL 2374244, at *4. As to how obesity should be considered at Step Three, SSR 19-2p indicates that although "[o]besity is not a listed impairment[,] . . . the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." *Id.* The Ruling further states that ALJs should "not make general assumptions regarding the severity or functional effects of obesity combined with another impairment(s)" and that each case should be evaluated based on the evidence in the case record. *Id.*

Here, ALJ Brock found obesity to be one of seven severe impairments from which Claimant suffers. (Tr. 35). Then, at Step Three, ALJ Brock cited to SSR 19-2p and discussed ways in which obesity "may or may not have an adverse impact upon co-existing impairments." (Tr. 37). ALJ Brock listed the following examples of potential impacts:

(1) obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart;

(2) obesity combined with arthritis affecting a weight-bearing joint may have more pain and limitation than arthritis alone, may have lesser ability to tolerate heat, humidity, or hazards, or may have excess adipose fat in hands and fingers causing difficulty with manipulation;

(3) obesity may contribute to fatigue and limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule.

(*Id.*). ALJ Brock indicated she took these potential impacts into account in Steps Two through Five of her evaluation but that "[t]he medical evidence does not establish the existence of the above signs or symptoms." (*Id.*).

ALJ Brock's Step Three analysis of Claimant's obesity is neither nonsensical nor contradictory as Claimant alleges. It is well established that Step Two of the evaluation process is a "*de minimis* hurdle" because "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). By listing potential effects obesity may have on other impairments and determining that the medical evidence in Claimant's record did not establish any such potential effects, ALJ Brock did not contradict the *de-minimis* Step-Two finding that Claimant's obesity is a severe impairment. Though ALJ Brock's Step Three evaluation did not discuss specific evidence in Claimant's case relating to obesity, she specified that she considered these impacts in Steps Two through Five of her evaluation, which would include her RFC determination. As will be discussed below, ALJ Brock evaluated the medical evidence relating to Claimant's obesity and related functional limitations in forming her RFC. Accordingly, ALJ Brock's Step Three analysis of Claimant's obesity falls squarely within SSR 19-2p's guidance.

Turning to ALJ Brock's allegedly deficient discussion of obesity later in her RFC determination, the Court again finds no error. SSR 19-2p directs that ALJs must consider the limiting effects of obesity when assessing a person's RFC. 2019 WL 2374244, at *4. But this Ruling does not mandate a particular mode of analysis for such consideration. *See Parr v. Comm'r of Soc. Sec.*, No. 2:20-CV-13173, 2021 WL 5986920, at *14 (E.D. Mich. Aug. 31, 2021) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). Nor does SSR 19-2 relieve the

claimant's burden of marshaling objective medical evidence and medical opinions establishing work-related limitations. *See, e.g., Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (W.D. Mich. 2009). It remains Claimant's burden to show specifically how her obesity, in combination with other impairments, limited her abilities beyond the ALJ's RFC determination. *Id.*

ALJ Brock's RFC determination started by outlining Claimant's administrative hearing testimony, including Claimant's statement that she was working on eating better to lose weight, that she weighed 344 pounds at a height of 5 feet 6 inches, and that she cannot lift much, can barely bend down, struggles to put on shoes, and can stand only five minutes and sit for 30-45 minutes at a time. (Tr. 40). ALJ Brock then exhaustively evaluated the objective medical evidence from Claimant's case record, specifically discussing obesity and other severe impairments in conjunction with obesity. For instance, ALJ Brock addressed medical records relating to Claimant's spine and ankle, highlighting how Claimant's musculoskeletal exams have shown normal, unassisted gait and normal back and cervical range of motion. (Tr. 41-42). As to Claimant's obesity, ALJ Brock stated:

> At height of 5 feet 6 inches, weight ranging from 325 to 358 pounds, and a body mass index between 50.84 and 59.73 kg/m2 (Exs. 8F/4; 11F/5, 17; 17F/33; 21F/13), the claimant is considered significantly overweight per agency guidelines at SSR 19-2p. Reasonably, this condition could potentially cause pain exacerbation on the spine and weight bearing joints. However, it is noted that throughout the record, the claimant has not complained of obesity related symptoms or limitations, nor have various exams shown obesity related deficits to cardiovascular functioning, respiratory functioning, musculoskeletal functioning, or any effect upon mental functioning. The claimant remains able to move about unassisted and in an adequate fashion. She has full use of her upper extremities and retains adequate range of motion in the lower extremities.

(Tr. 42).

Based on her consideration of Claimant's lumbar, cervical, and right ankle musculoskeletal findings, ALJ Brock concluded the objective evidence supports that Claimant would have

difficulty "with physically strenuous work involving heavy lifting and carrying." ALJ Brock stated that her RFC fully considered the effect of Claimant's musculoskeletal disorders and obesity in functioning by limiting Claimant to light work with postural limitations and environmental restrictions. (Tr. 43). This conclusion, ALJ Brock noted, "is consistent with the objective record showing normal, unassisted ambulation, satisfactory lumbar rand lower extremity range of motion and no significant signs of neurological compromise." (*Id.*).

Claimant feels ALJ Brock's analysis is contradictory and "raises more questions than it answers." The Court disagrees. ALJ Brock's analysis complies with SSR-19-2p's guidance and provides a logical bridge between the evidence of record relating to obesity and the functional limitations in the RFC. As outlined above, ALJ Brock relied on her exhaustive evaluation of Claimant's medical evidence relating to obesity and combined impairments in determining postural and environmental limitations were necessary. ALJ Brock's decision dedicates far more than five sentences to addressing Claimant's obesity and other symptoms and impairments exacerbating her obesity.

The Court also disagrees with Claimant's allegation that ALJ Brock mischaracterized evidence from Dr. Susan Couch to Claimant's detriment and viewed her examination "in a vacuum." Claimant believes Dr. Couch's observation that Claimant's weight affected her ability to ambulate, which led her to conclude that Claimant could not stand for greater than thirty minutes nor walk for greater than ten minutes without resting, is precisely the type of evidence contemplated by SSR 19-2p. (DN 16, at PageID # 2105-06). Per Claimant, ALJ Brock's rejection of Dr. Couch's opinion as "an essentially normal exam" was error because "obesity that compromises the ability to ambulate does not seem to qualify as 'essentially normal.'" (*Id.*).

In evaluating Dr. Couch's Medical Source Statement, ALJ Brock explained that "[t]hough [Dr. Couch] advised musculoskeletal pain did not affect the claimant's ability to stand/walk for long periods of time, noting the claimant had normal posture/gait with full range of motion of all extremities, later in her medical source statement she assessed no standing greater than 30 minutes nor walking for greater than 10 minutes without the opportunity to rest." (Tr. 46). ALJ Brock continued by referencing Dr. Couch's note that Claimant did not require an assistive device to stand or walk, was able to sit without limitation, and could perform activities of daily living without assistance. (*Id.*). Then ALJ Brock concluded Dr. Couch's opinion was "not persuasive in regard to standing and walking limitations, as the consultative exam was essentially a normal exam." (*Id.*).

Claimant is correct that ALJ Brock's evaluation of Dr. Couch's opinion did not explicitly mention Dr. Couch's note that Plaintiff's weight affected her ability to ambulate. (Tr. 46). But the above review of ALJ Brock's analysis reveals she implicitly considered Dr. Couch's observation by recognizing the contradictions in Dr. Couch's exam observations and medical source statement. Dr. Couch's statement that Claimant's weight affected her ability to ambulate sharply contradicts her statement two sentences later in her "diagnosis and summary" that "musculoskeletal pain does not affect her ability to stand/walk for long periods of time" and "[o]n exam, [Claimant] has normal posture/gait with full range of motion in all extremities." (Tr. 1377). Because Dr. Couch presented conflicting observations regarding the effect of Claimant's obesity on her ability to walk, the Court finds no error in ALJ Brock not specifically discussing Dr. Couch's observation that Plaintiff's weight affected her ability to ambulate.

ALJ Brock's rejection of Dr. Couch's standing and walking limitations based on her essentially normal exam findings likewise does not constitute error. Dr. Couch wrote "NORMAL"

10

across two forms assessing Claimant's range of motion. And, as stated above, Dr. Couch's "diagnosis and summary" concluded Claimant's musculoskeletal pain does not affect her ability to stand/walk for long periods of time and on exam, Claimant had normal posture/gait with full range of motion in all extremities. (Tr. 1367-70). ALJ Brock's conclusion that Dr. Couch's exam findings as to standing and walking were essentially normal is supported by Dr. Couch's exam notes and by substantial evidence elsewhere in the record. For these reasons, ALJ Brock did not err in evaluating Claimant's obesity in her RFC determination.

2. ALJ Brock's Analysis of the State Agency Psychologists' Opinions

Claimant next takes issue with ALJ Brock finding the opinions of the State Agency Psychologists to be generally persuasive and supported by the record but then failing to account for the Psychologists' determination that Claimant is "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (DN 16, at PageID # 2108 (citing Tr. 111, 148)). Claimant asserts ALJ Brock's RFC determination does not adequately explain how Claimant's moderate limitations in the ability to complete a normal workday and work week were accounted for and, relatedly, that ALJ Brock presented an incomplete hypothetical to the Vocational Expert during Claimant's hearing by omitting such limitations. (*Id.* at PageID # 2111). Citing to the Program Operations Manual System ("POMS") and Social Security Ruling 96-8p, Claimant emphasizes that the ability to maintain regular attendance and be punctual is critical for the performance of unskilled work, and any substantial limitation on this ability would substantially erode the occupational base. (*Id.* at PageID # 2107).

11

The Commissioner responds that contrary to Claimant's assertions, the State Agency Psychologists provided narrative explanation for Claimant's sought-after restrictions relating to completing a normal workday and workweek and ALJ Brock clearly considered their narrative explanation. (DN 18, at PageID # 2127). Specifically, the Commissioner points to how the State Agency Psychologists found Plaintiff could "[u]nderstand[] and perform[] simple and detailed instructions, but c[ould] only sustain attention for extended periods of 2-hour segments for simple tasks, while maintaining regular attendance and being punctual within customary tolerances," could "[i]nteract[] with supervisors and co-workers with occasional public contact," and could "[r]espond[] appropriately to occasional change in work tasks and c[ould] avoid hazards." (*Id.* at PageID # 2127) (quoting Tr. 97, 112, 132, 149)). ALJ Brock's inclusion of these restrictions in the RFC, the Commissioner argues, demonstrates her clear consideration of Claimant's ability to complete a normal workday without requiring excessive breaks. (*Id.*). The Commissioner further asserts it was not necessary to include a separate hypothetical question with additional limitation to the VE because the record did not support such additional limitation. (*Id.* at PageID # 2128).

Upon reviewing Claimant's case record, State Agency Psychologist Jane Sutherland ("Dr. Sutherland") determined Claimant was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 111). On the next page of her evaluation, Dr. Sutherland specified that Claimant remains mentally capable of the following: "Understanding and performing simple and detailed instructions, but can only sustain attention for extended periods of 2-hour segments for simple tasks, while maintaining regular attendance and being punctual within customary tolerances." (Tr. 112). When Claimant sought reconsideration of her claim, another State Agency Psychologist, Dr. Tonya Gonzalez,

12

reviewed her case record and adopted the same limitations as Dr. Sutherland. (Tr. 148-49). During Claimant's administrative hearing, ALJ Brock presented the VE with a hypothetical individual with several functional limitations, including being able to "perform simple, routine tasks[,]" "occasionally inter[acting] with coworkers, supervisors, and the general public," and "tolerat[ing] occasional change in the workplace . . ." (Tr. 80-81). The VE testified that several jobs would fall into this hypothetical. (Tr. 81). ALJ Brock then asked the VE whether adding a requirement to the initial hypothetical that an individual receive three additional fifteen-minute breaks each day on top of the standard morning, lunch, and afternoon breaks would preclude work. (Tr. 82). The VE responded affirmatively. (*Id.*).

ALJ Brock's RFC determination adopted the limitations from the first hypothetical presented to the VE during the hearing. (Tr. 38). Regarding Dr. Sutherland and Dr. Gonzalez's opinions, ALJ Brock found they were "generally persuasive and supported by the mental health records, the claimant's clinical presentations, her noted positive response to psychotropic medications, and her self-described activities of daily living." (Tr. 46).

ALJ Brock was not required to adopt verbatim every limitation from Dr. Sutherland and Dr. Gonzalez's opinions. The hypothetical she presented to the VE and then used as Claimant's RFC appropriately incorporated the restrictions from Dr. Sutherland and Dr. Gonzalez's opinions. Because both doctors found Claimant was able to sustain attention for extended periods of 2-hour segments for simple tasks, while maintaining regular attendance and being punctual within customary tolerances, no further limitation in the RFC was necessary. ALJ Brock's analysis, accordingly, does not conflict with the POMS' guidance that regular attendance is critical to performing work.

Claimant's argument seems to assume that "moderate" limitation in her ability to complete workday and workweek without interruption equates with a complete inability to perform these mental task demands. Were the Court to credit Claimant's argument, all claimants found to have moderate limitations in these areas would be found automatically disabled. This argument is not supported by caselaw, an expansive reading of POMS, or any regulation. *See, e.g., Baker v. Colvin*, No. 1:15-cv-00910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016). No error results from ALJ Brock not including a limitation for Claimant being off task during the workday beyond the existing limitations in her RFC.

### 3. ALJ Brock's Assessment of Claimant's Functional Limitations

Claimant lastly argues that ALJ Brock's RFC determination is not supported by substantial evidence because no medical opinions support the assessed exertional limitations. (DN 16, at PageID # 2111-12). Although ALJ Brock found part of Dr. Couch's opinion to be persuasive, Claimant points out that Dr. Couch did not opine any of the non-exertional limitations ALJ Brock included in her RFC. (*Id.* at PageID # 2112-13). Because the extensive medical evidence from Claimant's case record shows more than "relatively little" impairment, Claimant asserts the ALJ should have obtained additional medical opinion evidence concerning her functional limitations. (*Id.* at PageID # 2113).

The Commissioner explains that an ALJ's RFC determination need not perfectly correlate with a functional assessment from any medical source. (DN 18, at PageID # 2128-29). And the Commissioner indicates ALJ Brock had discretion in determining whether further evidence was necessary. (*Id.*). The Commissioner notes ALJ Brock properly found sufficient evidence existed in the nearly 1,700 pages of Claimant's record to determine Claimant's level of functioning. (*Id.*).

14

As for Dr. Couch's opinion, the Commissioner asserts that the limitations which ALJ Brock found to be persuasive are supported by the assessed RFC. (*Id.* at PageID # 2130).

An ALJ must consider "all the relevant evidence in the record[,]" including medical and non-medical evidence, to determine a claimant's work capacity. *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (holding ALJ properly determined the effect of claimant's conditions on her ability to work despite no medical opinion reaching the same conclusion) (quoting 20 C.F.R. § 404.1545(a)(1)). Put otherwise, "neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). As the Sixth Circuit stated in *Rudd v. Comm'r of Soc. Sec.*, "to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability[.]" 531 F. App'x 719, 728 (6th Cir. 2013). But the RFC determination, like the overall disability determination, is a conclusion reserved for the Commissioner. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner.").

Each claimant bears the burden of proving their disability by providing a complete record throughout the administrative review process. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also* 20 C.F.R. § 416.912(a). While an ALJ has "a duty to develop the record," *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015), she also "has discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)). Where the record is insufficient to support a disability determination, an ALJ may

recontact medical sources, request additional existing medical records, ask the claimant to undergo a consultative examination, or ask the claimant or others for more information. 20 C.F.R. § 416.920b(c)(i)-(iv).

In this case, ALJ Brock weighed all the relevant evidence in the record in determining Claimant's RFC. In over eight pages of single-spaced analysis, ALJ Brock comprehensively reviewed Claimant's subjective reports, medical records relating to both Claimant's physical and mental impairments, and the medical source statements of Dr. Couch and the State Agency Physicians and Psychologists. (Tr. 38-47). Though ALJ Brock found Dr. Couch's limitations on Claimant's ability to stand and walk were contradictory to her exam findings, ALJ Brock determined the remainder of Dr. Couch's opinion was "persuasive and consistent with the longitudinal exams, imaging studies, and continued conservative care." (Tr. 46). The remainder of Dr. Couch's medical source statement indicated Claimant had "no lifting or carrying greater restrictions" and can sit without limitation, perform activities of daily living without assistance, communicate and hear without issue, grasp objects reliably, and travel without issue. (Tr. 1367).

In reviewing the State Agency Physicians' opinions, ALJ Brock found their conclusions that Claimant could perform "a range of medium work exertion with frequent climbing of ramps and stairs, no climbing of ladders, ropes and scaffolds, frequent stooping, kneeling, crouching, and crawling, avoidance of concentrated exposure to extreme cold, heat, wetness, and humidity, avoidance of even moderate exposure to odors, dusts, gases, and poor ventilation, and avoidance of all exposure to unprotected heights" unpersuasive. (Tr. 46). ALJ Brock explained that "the combination of the claimant's impairments suggest [sic] such work would be too physically demanding and postural actions as described would likely cause pain exacerbation." (*Id.*).

ALJ Brock ultimately adopted an RFC combining aspects of Dr. Couch's medical source statement and the State Agency Physicians' opinions. By declining to include limitations on Claimant's ability to sit, lift, carry, communicate, and grasp, ALJ Brock aligned her RFC with the conclusions she found persuasive from Dr. Couch's statement. Likewise, ALJ Brock adopted the postural and environmental limitations recommended by the State Agency Physicians but found Claimant was more restrictively capable of performing "light work." ALJ Brock's reduction of Claimant's capability to light work, rather than the medium work recommended by the State Agency Physicians, is consistent with her determination that the postural and environmental limitations recommended by those Physicians would be too physically demanding for medium work. ALJ Brock formed a clear and logical bridge between the medical evidence and opinions in the record and her RFC determination. *See Young v. Saul*, No. 5:19-CV-00169-LLK, 2020 WL 4820714, at *2 (W.D. Ky. Aug. 19, 2020) (quoting *Mobley v. Comm'r of Soc. Sec.*, No. 1:19-CV-02777, 2020 WL 4273560, at *10 (N.D. Ohio July 24, 2020) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))); *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (ALJ's findings must be sufficient to "permit meaningful review").

For these same reasons, it was not necessary for ALJ Brock to seek "additional informed medical opinion evidence concerning Plaintiff's functional limitations[,]" as Claimant argues. ALJ Brock was provided sufficient medical evidence to determine Claimant's RFC and acted appropriately within her discretion in not supplementing the physician opinion evidence. The Court does not recommend relief on this claim.

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

### NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:     Counsel